# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48138-3-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| CURTIS MICHAEL SMITH, | |
| Appellant. | |

MAXA, A.C.J. – Curtis Smith appeals his conviction of second degree assault for striking Jesse Cubbison with a golf club. We hold that (1) the State presented sufficient evidence that Smith's assault inflicted substantial bodily harm on Cubbison, (2) the trial court did not err in denying Smith's proposed inferior degree instruction for fourth degree assault because the golf club could be viewed only as a deadly weapon under the circumstances, (3) a law enforcement officer's testimony about Cubbison's demeanor after the incident was not improper opinion testimony, (4) the prosecutor did not commit misconduct when she questioned Smith's alibi witnesses about not coming forward earlier, (5) Smith did not receive ineffective assistance of counsel, and (6) no cumulative error occurred.

Accordingly, we affirm Smith's conviction for second degree assault.

FACTS

On the night of May 28, 2015, Cubbison was in his trailer home when his girlfriend heard a noise outside. She left the trailer to investigate and Cubbison followed. A porch light illuminated two men who Cubbison recognized. One of them, Smith, was hitting the truck's windshield with a golf club. Two other people – both of whom used to live with Cubbison and his girlfriend – were sitting in a van nearby.

In an ensuing confrontation, Cubbison slipped on the ramp leading down from his trailer, falling on his back and hitting his head. Smith ran toward Cubbison with the golf club, stopped about three feet away, swung it overhand, and brought it down to hit Cubbison. Cubbison blocked the golf club with his left arm. Smith and the other man then ran to the van and drove away.

The State charged Smith with second degree assault and third degree malicious mischief. For the second degree assault charge, the information alleged that Smith had "recklessly inflicted substantial bodily harm, and/or did assault Jesse Cubbison with a deadly weapon." Clerk's Papers at 1.

*Cubbison's Wrist Injury*

Cubbison testified that when the golf club hit his arm the pain level was very high, he heard pops, his wrist instantly swelled up, and a large knot developed. His wrist "hurt like hell." Report of Proceedings (RP) (Sept. 9, 2015) at 21. Cubbison testified that the golf club broke his wrist. An aid car arrived and transported Cubbison to the hospital.

Cubbison was treated by Dr. Kevin Mierzejewski. Dr. Mierzejewski noted that there was an abrasion to Cubbison's left wrist and a little bit of swelling. Cubbison had limited range of

motion and pain in his wrist. Dr. Mierzejewski's initial impression based on his examination and a review of x-rays was that Cubbison had fractured his radius near his wrist. However, the radiologist's report later determined that the x-ray most likely showed a chronic injury.

When asked to clarify his conclusion about the type of injury Cubbison incurred, Dr. Mierzejewski stated:

> [M]y conclusion, looking back in time, would have been a fracture to the distal radius. Ultimately, like I said, the x-ray looked like it appeared chronic. *I do not know if additional testing revealed that to be true or not.*

RP (Sept. 9, 2015) at 39 (emphasis added). Dr. Mierzejewski admitted on cross-examination that he was not completely sure that Cubbison had fractured his wrist, but that was what he suspected. He also agreed that it was possible that what he saw as a facture could have been an old injury. Cubbison confirmed at trial that he had previously injured his left wrist and suffered from chronic numbness in two of his fingers.

Dr. Mierzejewski instructed Cubbison to wear a splint and follow up with an orthopedist. But a defense witness, Jayne Peterson, testified that she saw Cubbison without the splint. She also testified that she saw him scrapping a vehicle and chopping wood and that nothing appeared to be wrong with him. Cubbison testified that his wrist still continued to hurt at the time of trial.

*Officer Testimony*

At trial, the responding law enforcement officer, deputy sheriff Brian Rydman, testified. He recounted that he took a statement from Cubbison about the night's events. He provided the following testimony:

> Q: . . . . Describe for us what you observed about Mr. Cubbison outwardly while he was giving the statement to you.

A: Well, he was very forthcoming with the information. He – you know, he was very coherent about what had happened. He was able to answer my questions. He didn't hesitate as far as . . . [.] Sometimes if people don't want to become quite forthright with their information, they'll tend to kind of talk in circles. He was able to answer the questions. He looked me right in the eye as I asked specific questions of him.

Q: Okay.

A: So . . . [h]e didn't seem to hold anything – anything back.

RP (Sept. 9, 2015) at 56-57. Smith did not object to this testimony.

*State Challenge to Alibi Evidence*

Smith's theory of the case was that on the night of the alleged assault he had actually been at the house of Peterson, a friend, helping her paint her house. Peterson testified and confirmed that Smith had been staying at her house, along with Smith's girlfriend Karissa Steuermann and a fourth person, Norm Mussetter. Steuermann corroborated that story, testifying that she and Smith had been at the house painting and that it was an "all night thing." RP (Sept. 9, 2015) at 80.

On cross examination, the prosecutor asked Steuermann whether she had known of the charges against Smith and whether she told police that she had been with her boyfriend that night. She responded that she knew of the charges, but she admitted that she had not come forward with Smith's alibi. Smith did not object to this line of questioning.

Deputy Rydman testified about his efforts to locate and interview Peterson, Steuermann, and Mussetter. He stated that he had been able to locate only Mussetter and that he was not at the addresses provided.

During closing argument, the prosecutor argued that, despite the fact that Steuermann "had an explanation for where her boyfriend was, she told no one. She didn't come tell law

4

enforcement. She said nothing." RP (Sept. 9, 2015) at 111. In rebuttal, the prosecutor also stated, referring to Smith's alibi witnesses: "Ask yourself, 'Why did they not come forward? . . . Did they have any reason that they didn't want to be contacted earlier?' " RP (Sept. 9, 2015) at 122.

Referring to Mussetter, the prosecutor commented that deputy Rydman "found Mr. Mussetter, whose name you heard mentioned as being one of the people at Ms. Peterson's house. But he found him at a location that was not one of the ones that had been given to him to check." RP (Sept. 9, 2015) at 122. Smith did not object to any of these statements.

*Jury Instructions*

Smith requested that the jury be instructed on fourth degree assault, an inferior degree offense, on the grounds that there was a question whether Cubbison had suffered substantial bodily harm. The trial court rejected this instruction because the charging information also alleged that the assault was committed with a deadly weapon. The court stated that there was no question that the golf club had been used as a deadly weapon.

The State requested a "missing witness" instruction on the grounds that one of Smith's alibi witnesses did not appear for trial. The trial court rejected this instruction because the witness was outside of Smith's control and was generally unreliable.

The trial court's to-convict instruction stated that the State was required to prove either that Smith intentionally assaulted Cubbison and thereby recklessly inflicted substantial bodily harm or that Smith assaulted Cubbison with a deadly weapon. The instruction also stated that the jury did not need to be unanimous as to which of the two alternatives had been proved beyond a reasonable doubt.

*Conviction*

The jury returned a verdict of guilty on the second degree assault charge and not guilty on the third degree malicious mischief charge. Smith appeals the second degree assault conviction.

ANALYSIS

A.   SUFFICIENCY OF EVIDENCE OF SUBSTANTIAL BODILY HARM

Smith does not contest that there was sufficient evidence to prove that he was armed with a deadly weapon, one of the two alternative means submitted to the jury. But he argues that the State did not present sufficient evidence to convict him of second degree assault because there was insufficient evidence that his assault inflicted substantial bodily harm on Cubbison, the other charged means of committing second degree assault. We disagree.

1.   Legal Principles

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). In a sufficiency of the evidence claim, the defendant admits the truth of the State's evidence and all reasonable inferences drawn from that evidence. *Id.* at 106. Credibility determinations are made by the trier of fact and are not subject to review. *State v. Miller*, 179 Wn. App. 91, 105, 316 P.3d 1143 (2014). Circumstantial and direct evidence are equally reliable. *Id.*

RCW 9A.36.021(1) provides seven alternative means of committing second degree assault. *See State v. Smith*, 159 Wn.2d 778, 790, 154 P.3d 873 (2007). The State relied on two of the means here. First, under RCW 9A.36.021(1)(a), second degree assault occurs when a defendant "[i]ntentionally assaults another and thereby recklessly inflicts substantial bodily

6

harm." Second, under RCW 9A.36.021(1)(c), second degree assault occurs when a defendant "[a]ssaults another with a deadly weapon."

The to-convict instruction allowed the jury to find guilt based on either means, but did not require the jury to be unanimous on which of the means had been proved beyond a reasonable doubt. Because there was no particularized expression of jury unanimity, the State on appeal must establish that sufficient evidence supported both the substantial bodily harm and deadly weapon alternative means to sustain the guilty verdict. *State v. Owens*, 180 Wn.2d 90, 95, 323 P.3d 1030 (2014).[1]

2.    Substantial Bodily Harm Analysis

Under RCW 9A.04.110(4)(b), substantial bodily harm  means (1) "a temporary but substantial disfigurement," (2) "a temporary but substantial loss or impairment of the function of any bodily part or organ," or (3) "a fracture of any bodily part." The Supreme Court has defined "substantial" to mean "a degree of harm that is considerable" beyond mere existence of an injury. *State v. McKague*, 172 Wn.2d 802, 806, 262 P.3d 1225 (2011). Although the court declined to adopt any particular definition, it agreed with "considerable in amount, value, or worth" as a definition. *Id.*

Here, there was evidence that Cubbison fractured a bodily part – his left wrist. Dr. Mierzejewski's conclusion at the time was that Cubbison fractured his radius. The radiologist's review suggested that the x-rays showed a chronic injury. But Dr. Mierzejewski did not retract

---

[1] The State argues that even if there was insufficient evidence to prove substantial bodily harm, we can affirm Smith's conviction because there was substantial evidence of assault with a deadly weapon. But because there was no unanimity instruction, this argument is incorrect. *Owens*, 180 Wn.2d at 95.

his opinion and stated he did not know if the radiologist's opinion was correct or not. And Cubbison testified that the golf club broke his wrist. Viewing the evidence in a light most favorable to the State, a rational trier of fact could have found beyond a reasonable doubt that that Cubbison fractured his wrist.

We hold that the State presented sufficient evidence that Smith inflicted substantial bodily harm on Cubbison by fracturing his wrist. Therefore, because there also was sufficient evidence that Smith was armed with a deadly weapon, we reject Smith's sufficiency of the evidence challenge to his second degree assault conviction.

B.    INFERIOR DEGREE OFFENSE INSTRUCTION

Smith argues that the trial court erred in denying his request for an instruction for fourth degree assault as an inferior degree offense. We disagree.

1.    Legal Principles

RCW 10.61.003 provides that a jury may find a defendant not guilty of the charged offense but guilty of an offense with an inferior degree. Under this statute, both parties have a statutory right to an inferior degree offense instruction. *See State v. Corey*, 181 Wn. App. 272, 277, 280, 325 P.3d 250 (2014) (affirming, over defendant's objection, a conviction based on a lesser degree instruction proposed by the State). The party requesting an instruction on an inferior degree offense must show:

> "(1) the statutes for both the charged offense and the proposed inferior degree offense 'proscribe but one offense'; (2) the information charges an offense that is divided into degrees, and the proposed offense is an inferior degree of the charged offense; and (3) there is evidence that the defendant committed only the inferior offense."

*State v. Fernandez-Medina*, 141 Wn.2d 448, 454, 6 P.3d 1150 (2000) (quoting *State v. Peterson*, 133 Wn.2d 885, 891, 948 P.2d 381 (1997)).  We review de novo the trial court's decision on whether to give an inferior degree offense instruction.  *Corey*, 181 Wn. App. at 276.

The third requirement is the factual component of the test.  When determining whether the evidence was sufficient to support an inferior degree offense instruction, we view the evidence in the light most favorable to the party that requested the instruction.  *Fernandez-Medina*, 141 Wn.2d at 455-56.  However, the evidence must affirmatively establish the defendant's theory of the case, not merely allow the jury to disbelieve evidence of guilt.  *Id.* at 456.  An inferior degree offense instruction must be given if the evidence would permit a jury rationally to convict *only* on the inferior offense and acquit on the greater offense.  *Id.*  As long as the defendant presents sufficient factual evidence to support an inferior degree instruction, it does not matter that the instruction would be inconsistent with other portions of the defendant's case.  *Id.* at 459-60.

2.    Factual Component Analysis

The State does not contest that the first two prongs of the inferior degree test are satisfied here.  Fourth degree assault is an inferior degree offense to second degree assault.  *State v. Villanueva-Gonzalez*, 180 Wn.2d 975, 982 n.3, 329 P.3d 78 (2014).

To convict on second degree assault, the State was required to prove that Smith assaulted Cubbison either by recklessly inflicting substantial bodily harm or by using a deadly weapon.  *See* RCW 9A.36.021(1)(a), (c).  Smith would be guilty of fourth degree assault if he assaulted under circumstances not amounting to assault in the first, second, or third degree or custodial assault.  RCW 9A.36.041(1).  "Fourth degree assault is essentially an assault with little or no

bodily harm, committed without a deadly weapon – so-called simple assault." *State v. Hahn*, 174 Wn.2d 126, 129, 271 P.3d 892 (2012).

Under the factual prong, the parties seem to agree that an inferior degree instruction would have been appropriate based on the substantial bodily harm means. However, the only evidence presented that Smith assaulted Cubbison was that he hit Cubbison with a golf club. Therefore, the jury could have convicted Smith based only on a finding that he hit Cubbison with the golf club. If a rational jury could have found that the golf club was used only as a deadly weapon under the facts of this case, the jury could not have convicted Smith of only fourth degree assault and Smith would not be entitled to an inferior degree offense instruction.

RCW 9A.04.110(6) defines "deadly weapon" to mean a "weapon, device, instrument, article, or substance . . . which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death *or substantial bodily harm*." (Emphasis added.) Here, the only evidence regarding the golf club was Cubbison's testimony that Smith raised the golf club overhand and swung it downward at Cubbison as he lay on his back. There is no question that, as used by Smith, the golf club was *capable* of causing substantial bodily harm. No rational juror could have concluded that under these circumstances the golf club was not capable of causing substantial bodily harm.

This court reached the same conclusion in a similar case, *State v. Winings*, 126 Wn. App. 75, 107 P.3d 141 (2005). There, the victim was showing a sword to his friends when the defendant, who was drunk, took the sword and began swinging it around. *Id.* at 81. The defendant then stabbed the victim in the foot, cutting a hole in his shoe but not seriously injuring him. *Id.* The court looked to the circumstances in which the weapon was used – "the intent and

present ability of the use, the degree of force, the part of the body to which it was applied, and the physical injuries inflicted." *Id.* at 88. The court concluded that a sword, stabbed into a person's shoe, was a capable of causing substantial bodily harm and therefore was a deadly weapon. *Id.* at 88-89.

We hold that the trial court did not err in denying Smith's request for an inferior degree instruction on fourth degree assault.

C.      OPINION TESTIMONY BY DEPUTY RYDMAN

Smith argues that Deputy Rydman's testimony on Cubbison's demeanor was improper opinion testimony that improperly bolstered Cubbison's credibility. We disagree.

Opinion testimony is testimony that is " 'based on one's belief or idea rather than on direct knowledge of the facts at issue.' " *State v. Demery*, 144 Wn.2d 753, 760, 30 P.3d 1278 (2001) (quoting BLACK'S LAW DICTIONARY 1486 (7th ed. 1999)). In general, witnesses may not offer as testimony their opinion regarding the defendant's guilt or veracity. *State v. Rafay*, 168 Wn. App. 734, 805, 285 P.3d 83 (2012). This prohibition also applies to testimony about another witness's veracity. *Demery*, 144 Wn.2d at 764. Such testimony unfairly prejudices a defendant because it invades the jury's exclusive role to independently evaluate the relevant facts. *Rafay*, 168 Wn. App. at 805. Testimony by a law enforcement officer about another witness's veracity can be particularly prejudicial because an officer often carries a special aura of reliability. *Demery*, 144 Wn.2d at 765.

In this case, deputy Rydman testified that Cubbison was "very forthcoming with the information," was "very coherent about what had happened," and was unlike others who do not want to be forthright and who "talk in circles." RP (Sept. 9, 2015) at 56-57. This testimony was

11

not opinion testimony because it was based on deputy Rydman's personal observations, his "direct knowledge of the facts at issue." *Demery*, 144 Wn.2d at 760. Deputy Rydman was present when he took Cubbison's statement and testified about Cubbison's demeanor during the interview only. He did not interject any of his own opinion or beliefs about Cubbison's truthfulness. Further, the words "forthcoming" and "forthright" described Cubbison's demeanor, but they did not directly address whether he was telling the truth.

This court concluded that similar statements did not constitute improper opinion testimony in *State v. Saunders*, 120 Wn. App. 800, 86 P.3d 232 (2004). Saunders challenged several parts of an officer's testimony, including testimony that Saunders had given interviews at which he made inconsistent statements and the officer's comment that Saunders' answers to questions "weren't always truthful." *Id.* at 811-13. The court held that the first part of the testimony about Saunders's inconsistency was not improper because it was based on the officer's personal, direct knowledge of Saunders' statements. *Id.* at 812. By contrast, the second part of the testimony was improper because it "deal[t] directly with Saunders' credibility." *Id.* at 813.

As with the second part of the testimony in *Saunders*, deputy Rydman's testimony was based on his personal observations. The statements about Cubbison's demeanor did not comment on his truthfulness or otherwise impose on the jury's role of evaluating the evidence presented. Therefore, we hold that there was no improper opinion testimony.

D.     PROSECUTORIAL MISCONDUCT

Smith argues that the State committed misconduct by questioning alibi witnesses about why they had not come forward earlier and by highlighting that same issue in closing argument. Smith argues that this questioning and argument improperly suggested that Smith had a duty to

present exculpatory evidence and could be viewed as a variant of a "missing witness" argument, which the trial court precluded. We disagree.

1. Legal Principles

To prevail on a claim of prosecutorial misconduct, a defendant must show that "in the context of the record and all of the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial." *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). We review the prosecutor's conduct and whether prejudice resulted "by examining that conduct in the full trial context, including the evidence presented, 'the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury.' " *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (internal quotation marks omitted) (quoting *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006)).

When the defendant does not object to the challenged conduct, he is deemed to have waived any error unless the prosecutor's misconduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice. *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). In making this determination, we "focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *Id.* at 762. The defendant must show that (1) no curative instruction would have eliminated the prejudicial effect, and (2) the misconduct resulted in prejudice that had a substantial likelihood of affecting the verdict. *Id.* at 761.

2. Misconduct Analysis

A defendant has no obligation to present exculpatory evidence. *See State v. Sundberg*, 185 Wn.2d 147, 152-53, 370 P.3d 1 (2016). It is the State's burden in a criminal prosecution to

prove beyond a reasonable doubt every fact necessary to the charged crime. *Id.* at 152. A related rule is that, because a defendant has no duty to present evidence, the prosecutor may not comment on a defendant's lack of evidence. *Id.* at 153. But if a defendant advances a theory that exculpates him or her, the defendant's evidence is not immune from attack. *Id.* at 156. The State is allowed to argue that the evidence does not support the defense's theory. *State v. Lindsay*, 180 Wn.2d 423, 431, 326 P.3d 125 (2014).

Here, Smith presented two alibi witnesses, Peterson and Steuermann, who testified that he had spent all night on the evening of the assault painting Peterson's house. On cross examination, the prosecutor questioned Steuermann about why she had not come forward with this alibi earlier. The prosecutor addressed the issue again during closing argument, asking the jury "Why did [the witnesses] not come forward?" and "Did they have any reason that they didn't want to be contacted earlier?" RP (Sept. 9, 2015) at 122.

Smith argues that this questioning and argument improperly suggested that he had a duty to present exculpatory evidence and was a variant of the missing witness doctrine, which the trial court had precluded. Under the missing witness doctrine, the State may point out the absence of a "natural witness" when the witness appears to be under the defendant's control or uniquely available to the defendant and the defendant would not have failed to produce the witness unless his or her testimony was unfavorable. *State v. Montgomery*, 163 Wn.2d 577, 598, 183 P.3d 267 (2008). The doctrine allows the State to argue and the jury to infer that the witness's testimony would have been unfavorable to the defendant. *Id.*

Smith claims that the prosecutor shifted the burden to him to come forward earlier with Peterson and Steuermann as alibi witnesses. There are two problems with Smith's argument.

First, the prosecutor was not referring to Smith's presentation of evidence. She was suggesting that, if Smith actually had been with Peterson and Steuermann, they would have come forward immediately once he was charged. The fact that they did not indicated that their testimony was not credible. There is nothing improper about asking questions or arguing about the witnesses' conduct. Second, the missing witness doctrine does not apply because Peterson and Steuermann testified.

Smith also suggested that a fourth person, Mussetter, was present at Peterson's house. The prosecutor referenced Mussetter, who did not testify, in closing argument. Smith claims that this too was a missing witness argument. But the prosecutor did not suggest that the jury should presume that Mussetter's testimony would have been unfavorable. Instead, she asked Smith's witnesses whether they knew Mussetter and stated in closing that deputy Rydman "found [Mussetter] at a location that was not one of the ones that had been given to him to check." RP (Sept. 9, 2015) at 122. This argument did not suggest that Mussetter should have testified or that any testimony would have been adverse to Smith. The prosecutor's closing argument did not improperly reference the missing witness doctrine.

We hold that the prosecutor did not engage in misconduct with regard to Smith's alibi witnesses.

E.    INEFFECTIVE ASSISTANCE OF COUNSEL

Smith argues that he received ineffective assistance of counsel because his defense counsel failed to object to (1) the testimony of deputy Rydman about Cubbison's demeanor and (2) the prosecutor's alleged misconduct regarding alibi witnesses. However, we hold above that

No. 48138-3-II

deputy Rydman's testimony was not improper and that the prosecutor did not engage in misconduct. Therefore, we hold that defense counsel's representation was not deficient.

F.      CUMULATIVE ERROR

Smith argues that even if any one instance of error does not warrant reversal, their cumulative effect does. But Smith has failed to show that any error has occurred – that deputy Rydman's testimony was improper, that the prosecutor committed misconduct, or that his trial counsel should have objected to either. Therefore, we reject Smith's cumulative error argument.

CONCLUSION

We affirm Smith's conviction for second degree assault.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, A.C.J.

We concur:

_____
WORSWICK, J.

_____
SUTTON, J.

16