**NOTICE: SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareporter/

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE MAR 0 3 2016
CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on Mar. 3, 2016

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 91660-8 |
| Petitioner, | ) | |
| v. | ) | En Banc |
| CORY A. SUNDBERG, | ) | |
| Respondent. | ) | Filed MAR 0 3 2016 |

JOHNSON, J.—This case asks us to determine whether a prosecutor commits error when, during closing rebuttal argument, he comments that the defendant failed to call a witness to corroborate his affirmative defense of unwitting possession of a controlled substance. We hold that in a criminal prosecution where the defendant has the burden to establish an affirmative defense, no error occurs where the prosecutor comments on the defendant's failure to present evidence or testimony in support of the defense. Thus, we find no error in this case and reverse the Court of Appeals.

## FACTS AND PROCEDURAL HISTORY

Cory Sundberg was charged with and convicted of unlawful possession of a

controlled substance (methamphetamine) under RCW 69.50.4013(1). This statute sets forth a strict liability crime in that knowledge of the possession is not an element of the offense that the State has to prove. To reduce the harshness of this offense, courts have created an unwitting possession defense and placed the burden on the defendant to establish the defense by a preponderance of the evidence. At trial, the thrust of Sundberg's argument was to assert an unwitting possession defense, assuming this burden of proof.

Sundberg was arrested on an outstanding warrant while working on his foster father's property, where he also resided. Sundberg was performing maintenance on a shed and cleaning the outside of their mobile home on the day he was arrested. Before being taken into custody, Sundberg asked the arresting officer's permission to change out of his work overalls because they were wet from pressure washing the roof and sides of the house. Despite his request, Sundberg was transported to jail while wearing the overalls.

Sundberg was taken to the county jail and given a set of jail clothing. The clothes Sundberg was wearing were given to a corrections officer for an inventory search. In a front bib pocket of the overalls, the corrections officer found a clear plastic bag containing a white substance. At trial, Sundberg stipulated to the fact that the bag found in the front bib pocket of the overalls contained 0.1 grams of methamphetamine.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

In his testimony, Sundberg argued unwitting possession, claiming he had no idea there were drugs in the front bib pocket of his overalls, nor that he knew the small plastic bag was even there.

Sundberg testified that a man named Paul Wood—a name the defense brought up for the first time during Sundberg's trial testimony—helped with work on the house and shed for roughly six days just prior to the arrest. Sundberg had put out word that he needed some help and learned about Wood, who was looking for work, through his neighbors. Sundberg claimed that he occasionally lent Wood overalls to work underneath Sundberg's house and shed to prevent Wood from ruining his own clothes, which were not suited for this type of work. Sundberg estimated that Wood borrowed the overalls four of the six days Wood helped with work. Sundberg testified that prior to the day of his arrest, he wore the overalls only once during the period of time he employed Wood. Sundberg testified that Wood was not present on the day he was arrested because Sundberg either dismissed him or because Wood failed to show up that day.

The prosecutor cross-examined both Sundberg and his foster father about the existence, duties, and details of Paul Wood as a hired laborer. The prosecutor inquired into why Sundberg lent Wood his coveralls, why Wood needed to borrow coveralls, how well Sundberg knew Wood, how close the two lived to each other, how often Sundberg saw Wood, and if Sundberg could get ahold of Wood if

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

needed.

In closing argument, Sundberg's attorney asserted it was reasonable to believe Sundberg did not know the bag with methamphetamine was in the front bib pocket of his overalls. Sundberg's attorney acknowledged that to successfully raise an affirmative defense of unwitting possession of the drugs, he had "to present enough evidence to show by a preponderance that he didn't know [the methamphetamine] was there." 1 Verbatim Report of Proceedings (VRP) at 187. His attorney also asserted that "[t]he only evidence we have that [Sundberg] did not know that the methamphetamine was in his pocket was his own words." 1 VRP at 187. Additionally, despite the extensive cross-examination concerning Wood, Sundberg's attorney explained in closing argument that very little was known about Paul Wood—only that he was hired as a laborer to help Sundberg for roughly a week, that he borrowed Sundberg's overalls to protect his clothes, and that Wood was not present on the day Sundberg was arrested.

The claimed error on appeal occurred where, in the State's rebuttal closing argument, the prosecutor attacked Sundberg's affirmative defense. The State argued, "[T]his enigmas [sic], mysterious man named Paul Wood—he might as well be called John Doe." 1 VRP at 195. The State focused on what little was known about Wood:

I asked [Sundberg] okay, tell us about Paul Wood; describe him for

us, do you know him, how do you know him. [Sundberg] says he sees him about twice a week. He says he can get a hold of him. *Why isn't he here testifying?* It's their burden. *He's not here.* There's no evidence . . . that he . . . even exists.

1 VRP at 195 (emphasis added). Sundberg objected to the prosecutor's argument, and the court overruled the objection. The prosecutor continued by saying Sundberg's testimony "was obviously designed to tell a story to corroborate his defense. And again, it was his burden. *He didn't bring in Paul Wood.*" 1 VRP at 196 (emphasis added).

Out of the presence of the jury, Sundberg asked the court to instruct the jury to disregard the State's argument that Sundberg failed to call Wood to testify. Sundberg argued the State's comments were improper unless the prosecutor asked for a missing witness instruction. The State did not propose such an instruction. The court denied Sundberg's request to disregard the State's argument for two reasons. First, the court found no misconduct in the State's closing argument, and second, Sundberg failed to identify case law to warrant such an instruction. Sundberg was convicted.

Sundberg moved for a new trial, arguing prosecutorial misconduct pursuant to CrR 7.5(a)(2).[1] The court denied Sundberg's motion, ruling that there was no

---

[1] CrR 7.5(a)(2) provides, "**Grounds for New Trial.** The court on motion of a defendant may grant a new trial for any one of the following causes when it affirmatively appears that a substantial right of the defendant was materially affected: . . . (2) Misconduct of the prosecution or jury."

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

prosecutorial misconduct concerning the missing witness, Paul Wood. The court also ruled that the defense did not meet its burden of showing, to a substantial likelihood, that the jury verdict would have been affected.

In an unpublished opinion, the Court of Appeals reversed Sundberg's conviction, holding that while the prosecutor's comments did not improperly shift the burden of proof, they did impermissibly invoke the missing witness doctrine. *State v. Sundberg*, noted at 185 Wn. App. 1051 (2015). The court held that the prosecutor's comments on the defense's failure to call Wood to testify did not improperly shift the burden of proof from the State to Sundberg because an attack on Sundberg's evidence was proper where he had the burden to prove his affirmative defense of unwitting possession by a preponderance of the evidence. Nonetheless, the court held that the prosecutor committed misconduct by improperly invoking the missing witness doctrine, which created a substantial likelihood the jury verdict was affected. We granted the State's petition for review. *State v. Sundberg*, 184 Wn.2d 1001, 357 P.3d 666 (2015).

## ANALYSIS

For a prosecutor's comments to rise to the level of misconduct, they must be both improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). Improper comments become prejudicial if there is a substantial likelihood that the prosecutor's comments affected the jury's verdict. *Thorgerson*,

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

172 Wn.2d at 442-43.

In a criminal prosecution, the State must prove "'beyond a reasonable doubt . . . every fact necessary to constitute the crime with which [a defendant] is charged.'" *State v. W.R.*, 181 Wn.2d 757, 762, 336 P.3d 1134 (2014) (alterations in original) (quoting *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970)). A corollary rule founded on the concern for a defendant's right to due process under the Sixth Amendment to the federal constitution is that a prosecutor may not comment on a defendant's lack of evidence because the defendant has no duty to present evidence. *State v. Cheatam*, 150 Wn.2d 626, 652, 81 P.3d 830 (2003); *see Winship*, 397 U.S. at 364.

One exception to this rule is that if the defendant testifies about an exculpatory theory or defense that could have been corroborated by an available witness, then, in limited circumstances, the State may call attention to the defendant's failure to offer corroborating evidence. *State v. Blair*, 117 Wn.2d 479, 481, 816 P.2d 718 (1991). In the case before us, the State's actions fall into exactly this classification.

Here, the defendant testified and was cross-examined, so no concerns under the Fifth Amendment to the federal constitution exist, as may arise where comments are made concerning a defendant's exercise of the right to remain silent or the choice not to testify. Similarly, as the Court of Appeals correctly recognized,

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

the Sixth Amendment concerns implicated—which can arise where the State improperly shifts its burden to the defendant—are not applicable here. A defendant who asserts an unwitting possession defense bears the burden to present evidence in support of the defense. The Court of Appeals, however, concluded that the prosecutor's comments improperly (and inferentially) invoked the missing witness doctrine, requiring reversal. We disagree.

The missing witness doctrine is a well-established rule that permits the jury to infer that evidence or testimony would be unfavorable to a party if that "'evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and [, that party] fails to do so.'" *Blair*, 117 Wn.2d at 485-86 (quoting *State v. Davis*, 73 Wn.2d 271, 276, 438 P.2d 185 (1968)). Where the missing witness instruction is requested by a party and given by the court, the judge informs the jury that if a person who could have been a witness at the trial is not called to testify, the jury may infer that the person's testimony would have been unfavorable to the party who would naturally have called that witness.

It should be noted that the constitutional principles underlying the Fifth and Sixth Amendments, along with other concerns, significantly limit the circumstances where the missing witness instruction may be used. These

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Sundberg (Cory A.)*, No. 91660-8

limitations are expressed in *Blair* and *Washington Practice*[2] and were analyzed in *State v. Montgomery*, 163 Wn.2d 577, 596-601, 183 P.3d 267 (2008) (reversing defendant's conviction finding the instruction was erroneously given to the jury). Here, unlike *Montgomery*, no missing witness instruction was given and Sundberg testified at trial.

In *Blair*, a case similar to the facts here—where the jury was not given the missing witness instruction and the prosecutor's arguments were challenged as being improper—the missing witness doctrine was analyzed and no error was found. Although that case did not involve an affirmative defense, the defendant testified, and we held that it was proper for the prosecutor in challenging the defendant's testimony to comment on the defendant's failure to produce testimonial evidence to support a defense theory. In *Blair*, the defendant challenged his conviction of unlawful delivery of a controlled substance, arguing that the prosecutor committed reversible error by commenting during closing argument on the defendant's failure to call certain witnesses. The defendant in that case was arrested in his apartment, where sheets of paper with handwritten notes on them were seized by the police. During trial, the prosecution witnesses described the sheets of paper as "'crib' notes or sheets, of a kind commonly found

---

[2] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 5.20, at 177 (3d ed. 2008).

at locations where drugs are sold and constituting a 'crude business ledger.'" *Blair,* 117 Wn.2d at 482. The sheets contained lists of people, generally by first name only, with corresponding numbers across from the names. The defendant testified, claiming most of the names and numbers on the sheets of paper indicated personal loans and amounts owed to him for card games, travel arrangements, rent, and a medical appointment. In closing argument, the prosecutor referred to the sheets, saying:

> "those people weren't brought in to tell you those were gambling debts for you to evaluate the contents of their testimony or their demeanor."
>
> . . . .
>
> ". . . ask yourselves that if this were true that these were gambling debts and you were in the defendant's shoes and you knew who all these people were . . . wouldn't the first thing that would cross your mind be to bring in the friends that he says he loaned money to, say, 'Joe, I need you to come in'?"
>
> "And if Joe doesn't want to come in, he'd want to subpoena him and Sam and Fred and Paul and everybody else that's on that list and say, 'Well, what's this for?' 'Well, it's a gambling debt.' And if he didn't do that, couldn't you infer that their answer wouldn't have been, 'It was a loan. It's a gambling debt'?"

*Blair,* 117 Wn.2d at 483-84. In closing rebuttal argument, the prosecutor continued, "'Why not put or bring them all in and settle the matter? There's a reason for that, and the reason is simple. He couldn't bring those people in to say what he wanted them to say.'" *Blair,* 117 Wn.2d at 484.

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

We held in *Blair* that "[t]he prosecutor was entitled to argue the reasonable inference from the evidence presented" because the defendant specifically testified about the notations on the sheets of paper. *Blair*, 117 Wn.2d at 491. Notably, we found no error occurred and no constitutional concerns were implicated. Our reasoning in *Blair* relied on Court of Appeals' decisions (*State v. Contreras*, 57 Wn. App. 471, 788 P.2d 1114 (1990), and *State v. Barrow*, 60 Wn. App. 869, 809 P.2d 209 (1991)) to conclude that—in limited situations where a defendant actually testifies—prosecutors are permitted to comment on a defendant's failure to produce corroborative evidence to support their testimony and that such comments do not improperly shift the burden of proof. The same reasoning applies equally here, where Sundberg testified about Woods and was cross-examined.

A defendant bears the responsibility of proving an affirmative defense by a preponderance of the evidence, and no error occurs where the prosecutor attacks such evidence or a lack thereof. This distinction is especially pertinent here, where the prosecutor's arguments related directly to the cross-examination of the defendant concerning Paul Wood. The missing witness doctrine plays no part in such circumstances. Additionally, while *Blair* recognized and discussed limitations applicable to the missing witness doctrine when the State would commit error in commenting on the defendant's evidence, those limitations are irrelevant here. Significantly, *Blair* found no constitutional error occurred. This conclusion is

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

supported by the reasoning in other cases.

In *Contreras,* the Court of Appeals correctly held that it is permissible for a prosecutor to inquire into a defendant's failure to present evidence that would corroborate defense testimony:

> When a defendant advances a theory exculpating him, the theory is not immunized from attack. On the contrary, the evidence supporting a defendant's theory of the case is subject to the same searching examination as the State's evidence. The prosecutor may comment on the defendant's failure to call a witness so long as it is clear the defendant was able to produce the witness and the defendant's testimony unequivocally implies the uncalled witness's ability to corroborate his theory of the case.

*Contreras,* 57 Wn. App. at 476. While *Contreras* differs in that it involves a defendant who failed to call an alibi witness to testify, the rationale applies to our case nonetheless. Here, Sundberg—by tacitly pointing the finger at Paul Wood— was in the unique situation specified in *Contreras*. Sundberg was the only party able to produce Woods, and Woods, if called, could at least to some degree corroborate Sundberg's theory of unwitting possession.

In another case factually and procedurally similar to the one here, the Court of Appeals reaffirmed a prosecutor's argument challenging a defendant's lack of corroborative testimony evidence. *Barrow,* 60 Wn. App. 869. This case involved a defendant charged with unlawful possession of a controlled substance (a narcotics pipe that contained cocaine residue). Like our case, Barrow raised an affirmative

12

*State v. Sundberg (Cory A.)*, No. 91660-8

defense of unwitting possession. Barrow testified that the pipe was his brother's, that he "had surreptitiously taken the pipe from his brother in hopes of using it to get high with somebody, and that he therefore had not known the pipe contained cocaine residue." *Barrow*, 60 Wn. App. at 871. During closing argument, the prosecutor questioned whether Barrow's testimony was believable and repeatedly asked, "'Where is his brother'" who could corroborate Barrow's defense. *Barrow*, 60 Wn. App. at 871. The court held that such comments were acceptable, reasoning that "a prosecutor can question a defendant's failure to provide corroborative evidence if the defendant testified about an exculpatory theory that could have been corroborated by an available witness." *Barrow*, 60 Wn. App. at 872. Here, Sundberg testified asserting an affirmative defense and was questioned extensively about Paul Wood during cross-examination. We hold no error occurred.

*State v. Sundberg (Cory A.)*, No. 91660-8

We reverse the Court of Appeals.

WE CONCUR:

Madsen, C.J.

Owens, J.

Fairhurst, J.

Stephens, J.

Wiggins, J.

González, J.

Yu, J.