
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 74644-8-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JOSE LUIS CORONADO, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: October 2, 2017 |
| | ) | |

MANN, J. — Jose Coronado appeals his conviction for rape in the second degree for having sex with the 14-year-old daughter of his then-girlfriend in 2004. He argues that the trial court abused its discretion when it denied his motion to substitute appointed counsel and that the prosecutor committed reversible misconduct during closing argument.

We affirm Coronado's judgment and sentence.

## FACTS

In 2001, 12-year-old J.J. lived with her alcoholic and drug addicted mother, two older siblings, and periodically Coronado. Beginning in 2001, and over several years, J.J. testified that Coronado had sexual intercourse with her on multiple occasions. In March 2004, when J.J. was 14, she was brought home from the hospital suffering from

kidney stones. When she got home she was given something to help her sleep. J.J. woke up to find Coronado lying next to her. Her pajama bottoms and underwear were pulled down and she was wet. Coronado admitted to J.J. that he had ejaculated inside her. He also left her a pregnancy test kit and a note saying that he was trying to impregnate her. J.J. wrote a note saying that Coronado raped her in her sleep and gave it to her boyfriend who in turn gave it to J.J.'s mother. J.J.'s mother kicked Coronado out of the house.

Years later, J.J. reconnected with Coronado and the two became friends. In October 2014, the State charged Coronado with assault in the second degree (Count II) after J.J. alleged that Coronado assaulted her during a night of drinking and smoking marijuana. When J.J. told the investigators during the investigation that Coronado tried to have sex with her on that same evening, the State added a charge for attempted rape in the second degree (Count I). When J.J. alleged that Coronado sexually assaulted her when she was a child, the State added two more counts: rape in the second degree for the alleged rape occurring on March 30, 2004 (Count III), and child molestation in the second degree for an incident occurring sometime during 2001 (Count IV).

The jury found Coronado guilty of count III, rape in the second degree, for the incident that occurred in March 2004. The jury deadlocked on the other three charges.

Coronado appeals.

## ANALYSIS

### Substitution of Counsel

Coronado argues first that the trial court abused its discretion when it denied his three motions to substitute his attorney, John Ewers. We disagree. We review a trial

court's decision to deny new court appointed counsel for abuse of discretion. State v.

Varga, 151 Wn.2d 179, 200, 86 P.3d 139 (2004).

A.    Motions to Discharge

Ewers was appointed to represent Coronado, who was indigent.  On February

18, 2015, Coronado moved to discharge Ewers for another lawyer.  The court invited

Coronado to explain why new counsel was warranted:

> The Court: Can you just tell me very briefly why it is that you think you
> want a new attorney other than Mr. Ewers?
>
> [Coronado]: I believe that I was improperly represented.
>
> The Court: Anything else, sir?
>
> [Coronado]: I've been in here five months, sir, I mean, I don't know
> anything what's going on with my case or whatever. During the whole
> time, I've been doing—I've been spending my time with basic life skills,
> which I've completed over the 21 hours and 14 sessions and everything,
> sir.
>
> So I was hoping I would be released on my own recognizance, being here
> five months and never been committed (sic) for any crime or, you know,
> and I was hoping I'd get waivered or whatever, first-time felony or
> something or—whoops, excuse me.[1]

The court then asked the prosecutor and Ewers whether they wished to add

anything.  The court then denied Coronado's motion: "Okay.  Based on the record that

Mr. Coronado just made, there is absolutely no basis to discharge counsel.  Mr.

Coronado, frankly, Mr. Ewers is a very good lawyer.  Mr. Ewers, I just would encourage

you to continue having conversations with Mr. Coronado.  I'm going to deny the

motion."[2]

---

[1] Report of Proceedings (RP) (Feb. 18, 2015) at 3-4.
[2] RP (Feb. 18, 2015) at 4-5.

On May 6, 2015, Coronado moved again to discharge Ewers, submitting a six-page handwritten letter to the court. The court reviewed the letter and at the hearing on Coronado's motion, asked Coronado if he wished to add anything. Coronado explained that he felt uncomfortable with Ewers, that he believed him to be an ineffective lawyer, and that he wanted a better lawyer because he wanted to "go to trial for this." The court assured Coronado that Ewers "is more than capable of taking this case to trial. He's a very good trial attorney, and . . . that's not a problem if that's what you wish."[3]

After asking Ewers whether he wanted to respond to Coronado's complaints, the court explained why it was denying the motion. The court reiterated that it spent a "great deal of time" reviewing Coronado's letter and restated Coronado's concerns: that Coronado was uncomfortable with Ewers, that he wanted a better lawyer, and that he wanted a lawyer who would take his case to trial. The court denied his motion:

> Frankly, Mr. Coronado, you're not entitled to an appointed lawyer of your choosing. You are entitled to an appointed lawyer if you're indigent. Secondly, Mr. Ewers frankly is a very good lawyer, he's a very capable lawyer. He handles cases of this magnitude all the time, and frankly he's willing to take your case to trial if it doesn't resolve and it's your wish to take your case to trial. Then that's what is going to happen.
> So for all those reasons, I'm going to deny your motion.[4]

On July 17, 2015, Coronado moved a third time to discharge Ewers:

> The Court: So, Mr. Coronado, good morning. What is it you want to say briefly, sir?
>
> [Coronado]: Your Honor, I have not been effectively—under the Sixth Amendment, my right to have effective counsel which encompasses due process. My rights have been violated numerous times. Plus the courtroom rules of 3.3 has been violated to a certain point. Also the

---

[3] RP (May 6, 2015) at 7.
[4] RP (May 6, 2015) at 9.

Constitution of the Amendment of the Fourteenth has also been violated as well as violation of courtroom rules 8.3, sir.

There have been certain situations that I have been asked and wished for from my attorney to do in my favor and stuff which are not attended to. So I feel like I am not being effective—I mean, my attorney has not been totally effective.

The Court: We have a lot more cases to go, Mr. Coronado, so anything else you want to tell me?

[Coronado]: Well, if you're not willing to grant the dismissal of counsel, your Honor—

The Court: Yeah, I've denied your motion to discharge, and I told you previously, Mr. Ewers is very competent counsel, so I've denied that. I'm going to continue to deny that.

Coronado did not move again to substitute Ewers. The case proceeded to trial.

## B.    Coronado was not Entitled to New Counsel

"A defendant does not have an absolute, Sixth Amendment right to choose any particular advocate." State v. Stenson, 132 Wn.2d 668, 733, 940 P.2d 1239 (1997). To warrant substitution of counsel, a criminal defendant must show good cause, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant. Generally, the defendant's loss of trust or confidence in the defendant's counsel is not a sufficient reason to appoint a new counsel. Stenson, 132 Wn.2d at 734.

To determine whether Coronado was entitled to new counsel, we examine three factors: (1) the extent of the conflict, (2) the adequacy of the court's inquiry into the conflict, and (3) the timeliness of the motion to substitute counsel. State v. Cross, 156 Wn.2d 580, 607, 132 P.3d 80 (2006). Here, Coronado only argues that the trial court failed to make adequate inquiries into the conflict. "[A] trial court conducts adequate

inquiry by allowing the defendant and counsel to express their concerns fully." State v. Shaller, 143 Wn. App. 258, 271, 177 P.3d 1139 (2007). A trial court must inquire into "(1) the reasons given for the dissatisfaction, (2) the court's own evaluation of counsel, and (3) the effect of any substitution upon the scheduled proceedings." Stenson, 132 Wn.2d at 734.

Here, the court did not abuse its discretion. First, the record shows that, at best, there was a minor conflict: communication was strained and Coronado was not confident with Ewers's ability as a lawyer. This conflict did not constitute good cause to warrant the substitution of Ewers. The record, including Coronado's six-page letter submitted with his second motion to substitute, showed absolutely no basis for discharging Ewers. The court's instructions to Ewers and Coronado to keep communicating and its assurance to Coronado that Ewers was well-qualified to defend Coronado mitigated the conflict.

Second, the trial court adequately inquired into the conflict by allowing Coronado and his attorney to express their concerns fully. The court asked Coronado to explain why substitution was warranted three times, and each time Coronado—the moving party—failed to provide any cogent reason for why the court should substitute Ewers. When Coronado raised a concern about Ewers's ability, the court reiterated that Ewers was "a very good" and "very capable" lawyer.

On this record, we cannot say that the court failed to adequately inquire into conflict. The court did not abuse its discretion when it denied Coronado's motions to substitute counsel.

*Prosecutorial Misconduct*

To prevail on a claim of prosecutorial misconduct, the defendant must establish "'that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.'" State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011) (quoting State v. Magers, 164 Wn.2d 174, 194, 189 P.3d 126 (2008)). Improper comments become prejudicial "if there is a substantial likelihood that the prosecutor's comments affected the jury's verdict." State v. Sundberg, 185 Wn.2d 147, 152, 370 P.3d 1 (2016).

A.    Grooming

Coronado argues first that the prosecutor committed prejudicial misconduct by arguing that Coronado "groomed" J.J. without evidence. We disagree.

During closing argument, the prosecutor used the term "grooming" three times to explain Coronado's interactions with J.J.:

> Now, J.J. may not have realized that was what was happening there, but [Coronado] came into her life to fill the role of a responsible, dependable, reliable adult. Now, what else J.J. didn't realize, because she was too simple-minded at 12 to understand, and mom was too high and drunk to understand, is that Jose Coronado, during this entire time, was grooming Jessica, setting her up, building opportunities to be alone with her, building opportunities to take advantage of her, and building opportunities for people not to believe her.
>
> Because you heard [J.J.'s mother] sit here on the stand that, even today, "He's a good guy," even today, "He shouldn't be in trouble." And that, ladies and gentlemen, is why, in 2014, J.J. still trusted him, still hung out with him, and still was around him.
>
> So how did we end up here? It's, really, very simple. We just talked about that a little bit, the grooming of J.J. This was the most reliable, dependable adult in her household. Mom was high and drunk; dad really wasn't there. It was him. He walked her to school; he played video games with her; he hung out with her; he did everything that no other adult had done in her

life. That's how you ended up here today. So let's talk about the taking of J.J., the taking of her innocence, the taking of her body, and the taking of her trust.[5]

Coronado did not object to these first two uses of "grooming."

Soon after the prosecutor used the word again, this time to explain why J.J. reconnected with Coronado after he raped her:

So, after [Coronado] was kicked out [of J.J.'s mother's house in 2004], you would think that would be the end of that. No. [J.J.] reconnected with him three years later. But that might be the next time you're asking: Why? He's proven himself that he can't stop attacking you. Why would you reconnect with him if you had a choice[?]

That answer, too, is simple: She's still a child. She's still 17 years old. And remember we talked about he groomed her to be reliant, to be dependent, to trust him, and I want you all to think about—[6]

Coronado objected to "the grooming language" because there was "no testimony to that effect." The objection was sustained. The prosecutor rephrased her argument:

I want you all to think about a relationship you had with someone really close. How long did it take you to break that relationship, if you did? How long did it take for you to become angry with them? Now I want you to think back in the mind of a 17-year-old who grew up in a dysfunctional home, where the only reliable, dependent adult in her life was him, because when he wasn't raping her, when he wasn't molesting her, he was a good guy.

So, maybe, if he's not touching me, maybe he's not raping me, we can be okay again. I could have that relationship that I initially wanted with him. That's how you end up reconnecting with him. And it makes sense.[7]

Coronado did not object to this argument.

In general, a prosecutor is an advocate and is free to argue all reasonable inferences based upon the evidence introduced at trial. State v. Russell, 125 Wn.2d 24,

---

[5] RP (Oct. 26, 2015) at 894 (emphasis added).
[6] RP (Oct. 26, 2015) at 901 (emphasis added).
[7] RP (Oct. 26, 2015) at 901-02.

86, 882 P.2d 24 (1994). The prosecutor may not, however, make prejudicial statements that are not supported by the record. State v. Dhaliwal, 150 Wn.2d 559, 577, 79 P.3d 432 (2003). A prosecutor argues facts not in evidence when arguing that a defendant groomed a victim without first providing expert testimony regarding the grooming process. In re Pers. Restraint of Phelps, 197 Wn. App. 653, 676, 389 P.3d 758 (2017) ("expert testimony is required if the State intends to rely on the grooming process to prove and argue its case").

Here, however, after Coronado's objection was sustained, the prosecutor restated her argument based on the evidence presented, and in a manner easily understood by the jury. The argument was not improper and therefore not misconduct.

B.      Comment on Lack of Evidence

Coronado argues second that the prosecutor committed misconduct by commenting on the lack of evidence presented by Coronado.

During closing argument, the prosecutor stated:

> I want to point out that's what also important is that you are to find whether or not [the State] proved these charges to you beyond all reasonable doubt based off all of the evidence presented, and I believe lack of evidence. You have absolutely no different account of what happened than what [J.J.] said. That is the only proof you have. There is no other variation.[8]

Coronado objected on the grounds that the prosecutor was shifting the burden. The trial court sustained the objection.

The prosecutor continued:

> The State has a burden, as I stated, to prove these charges to you beyond a reasonable doubt. And that burden is completely on the State and the

_____

[8] RP (Oct. 26, 2015) at 911.

State welcomes that burden. But what you are to look at is the evidence that's been presented in this case. There's absolutely no different version put before you of what happened. You don't have any other witness saying, "No. [J.J.] said she lied. She wasn't raped." Nothing else.[9]

Coronado objected again, and the court sustained the objection and instructed the jury to disregard "anything inconsistent with the jury instructions. The burden rests with the State."

The prosecutor continued:

The State could have brought in witnesses that contradicted each other. We could have done that. I think you heard a little bit about [J.J.'s mother] and [J.J.], that their details sometimes don't measure up. But what you don't have before you is one version of what happened. One.[10]

Coronado objected a third time and the court sustained his objection.

As an initial matter Coronado argues that we analyze these statements under the constitutional harmless error standard because they implicated his Fifth Amendment right to silence. But a "prosecutor may say that certain testimony is undenied as long as he or she does not refer to the person who could have denied it." State v. Ramierez, 49 Wn. App. 332, 336, 742 P.2d 726 (1987). Because the prosecutor's statement did not directly implicate Coronado's Fifth Amendment right, we do not apply the heightened constitutional harmless error standard of review.

The State must prove "beyond a reasonable doubt . . . every fact necessary to constitute the crime with which [a defendant] is charged." Sundberg, 185 Wn.2d at 152-53 (alterations in original) (internal citations omitted). Because the defendant has no duty to present evidence, "a prosecutor may not comment on a defendant's lack of

---

9 RP (10/26/15) at 912.
10 RP (10/26/15) at 912.

-10-

evidence." Sundberg, 185 Wn.2d at 153. Here, the prosecutor's repeated remarks that there was only one version of events presented created an improper inference that Coronado failed to present an alternative version of events.

But Coronado must also prove that any misconduct was "prejudicial in the context of the entire record and the circumstances at trial." Thorgerson, 172 Wn.2d at 442. He fails to do so. The State presented overwhelming evidence that Coronado raped J.J. in March 2004. For example, J.J. testified that when she awoke, Coronado was behind her, her pajama pants and underwear were pulled down, and her vagina was wet with Coronado's semen. J.J. testified that when she confronted Coronado about what happened, he admitted to her that he had sex with her because he "was trying to impregnate [her]." He also left her a pregnancy test kit. J.J. testified that she wrote a note detailing the event and gave it to her boyfriend at the time who in turn gave it to J.J.'s mother, C.C. C.C. testified that she remembered receiving J.J.'s note, confronting Coronado about the incident, and kicking him out of the house because of it. Coronado admitted to C.C. that he "was in love with [J.J.]," had sex with her while she was asleep, and left her a pregnancy test kit. A police detective testified that he took a statement from both C.C. and J.J. just days after the rape and obtained the pregnancy kit and booked it into evidence. A second police detective testified that when he took statements from C.C. and J.J. shortly after the rape neither exhibited confusion or impairment.

Based on the evidence presented, Coronado fails to demonstrate that there is a substantial likelihood that the prosecutor's comments, if improper, affected the jury's verdict. Sundberg, 185 Wn.2d at 152.

We affirm Coronado's judgment and sentence.

_____ Mann, J.

WE CONCUR:

_____

Cox, J.