IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36328-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DAVID MATTHEW MCGOVERN, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, C.J. — David Matthew McGovern appeals his conviction for first degree theft. We affirm his conviction, but remand for reconsideration of discretionary legal financial obligations (LFOs).

FACTS

On August 23, 2015, David McGovern was working as a Walmart night manager when a deposit bag containing over $20,000 in cash went missing from a store safe. At the time of the loss, approximately 20 to 25 Walmart employees had authority to access the safe. However, video surveillance revealed only five employees in the area during the critical time period. One of the five people was Mr. McGovern.

Walmart's asset protection managers reviewed video surveillance footage of the cash office containing the safe. They observed Mr. McGovern accessed the safe at

approximately 7:00 p.m., one hour prior to his scheduled shift. No one else was in the vicinity at the time. When Mr. McGovern entered the cash office he was talking on a cell phone. Contrary to company policy, Mr. McGovern wore a jacket and carried a satchel. Mr. McGovern stayed on his phone as he began pulling bags of cash (known as re-set bags) meant to replenish self-checkout stations. As he pulled the bags, he hugged the safe's door up against him. This blocked the surveillance camera from recording what Mr. McGovern was doing inside the safe. The video did record a deposit slip visible briefly at Mr. McGovern's right side as he was working inside the safe. Walmart's deposit bags contain deposit slips. Re-set bags do not.

Videos from prior shifts indicated Mr. McGovern normally took about two to four minutes to pull re-set bags. On August 23, it took him five minutes. Once he was done with the safe, Mr. McGovern left the cash office, went to the men's bathroom (where there was no video), and then left the building and drove off in his car. Shortly thereafter he returned to Walmart, went back to the cash office and reopened the safe two times before leaving.

The asset protection managers observed Mr. McGovern was the only employee who deviated from standard procedures on August 23. The other four employees who

accessed the safe all engaged in typical shift work. In addition, most of the other employees who accessed the safe were not alone.

After reviewing the surveillance video, the asset protection managers determined their sole target of investigation was Mr. McGovern; none of the other employees had done anything abnormal. Mr. McGovern was interviewed and disclaimed any knowledge about the missing money. However, after the loss prevention mangers laid out the results of their investigation, Mr. McGovern said, "'Well, you already know what I did so do what you gotta do.'" Report of Proceedings (RP) at 219. Walmart subsequently terminated Mr. McGovern's employment and the matter was turned over to law enforcement.

A police officer assigned to the investigation interviewed Mr. McGovern. During the interview, Mr. McGovern recounted what he was doing during the surveillance footage. Mr. McGovern said he dropped a deposit bag and had to kneel to collect the cash that spilled from it.[1] He also explained he briefly went home prior to his shift on August 23 because he realized he forgot his work radio. Mr. McGovern mentioned he had filed for bankruptcy and was getting a divorce.

---

[1] The video does not contain any footage indicating a bag had been dropped on the floor or that Mr. McGovern knelt down to retrieve fallen bills.

The officer interviewed the four other Walmart employees who had access to the safe on August 23. The officer asked the employees questions about their work routines and financial circumstances. Based on his interviews, the officer concluded his sole focus of investigation was Mr. McGovern.

A warrant was obtained for Mr. McGovern's financial records. It was discovered Mr. McGovern started making large cash deposits (hundreds or thousands of dollars) into his bank account the day after the Walmart money went missing. In a follow-up interview, Mr. McGovern told law enforcement he had considered stealing from Walmart, but decided not to. Mr. McGovern stated he had cashed out approximately $7,000 in retirement funds to pay his debts. He also borrowed another $7,000 from family. Mr. McGovern claimed he was hiding cash from his wife in order to avoid giving her money in the event of a divorce. Mr. McGovern again denied taking money from the Walmart safe.

The State charged Mr. McGovern with first degree theft. Prior to trial, Mr. McGovern filed a motion in limine objecting to the State's attempt to have Walmart's asset protection managers narrate the events of the surveillance video. Mr. McGovern argued the video should stand on its own. Mr. McGovern also objected to testimony from the State's witnesses that would express an opinion on his guilt.

4

The trial court granted Mr. McGovern's motion in part. The court agreed to prohibit the State's witnesses from providing opinions as to guilt. However, the court allowed the Walmart managers to testify as experts on store procedures and to provide narrative explanations of the surveillance video footage. Mr. McGovern was advised he should object if he believed the testimony veered from this approved scope of testimony into improper opinions of guilt.

The case proceeded to trial. The State presented testimony from two Walmart asset protection managers, five employees (including all employees who had access to the safe on August 23, other than Mr. McGovern) and the investigating police officer. At no point during the State's case did Mr. McGovern object to testimony from the State's witnesses as constituting improper opinion testimony as to guilt. Nor did Mr. McGovern make any objections based on prosecutorial misconduct. In his case in chief, Mr. McGovern presented testimony from two relatives who verified loaning him money. Mr. McGovern also testified on his own behalf. The jury convicted Mr. McGovern as charged.

At sentencing, the parties agreed on restitution in the amount of $20,533.66. In addition to restitution, the trial court imposed mandatory and discretionary LFOs. Prior to imposing discretionary LFOs, the trial court did not make an individualized inquiry into

Mr. McGovern's ability to pay. Instead, the court cited Mr. McGovern's excellent work history.

Mr. McGovern timely appeals his judgment and sentence.

ANALYSIS

Mr. McGovern argues for reversal of his conviction based on evidentiary error and prosecutorial misconduct. He also challenges imposition of LFOs. Much of our analysis is guided by principles of error preservation.

Appellate review of trial errors generally requires preservation through a contemporaneous objection. *See* RAP 2.5(a). Exceptions exist for constitutional errors and errors as to jurisdiction or failure to state a claim. *Id*. But evidentiary errors are not constitutional. They are generally deemed waived if unaccompanied by an objection. *State v. Powell*, 166 Wn.2d 73, 84, 206 P.3d 321 (2009) (plurality opinion).

While allegations of prosecutorial misconduct are constitutional, unpreserved errors are still rarely recognized on appeal. *See In re Pers. Restraint of Phelps*, 190 Wn.2d 155, 165, 410 P.3d 1142 (2018). To warrant review, an allegation of misconduct must have been so flagrant and ill-intentioned that it could not have been neutralized by a curative instruction. *Id*. Contrary to what is often suggested in appellate briefing, alleging multiple trial errors is not a basis to recognize unpreserved errors on appeal. The doctrine

of cumulative error has to do with assessing the prejudice arising from error. *See In re Pers. Restraint of Cross*, 180 Wn.2d 664, 690, 327 P.3d 660 (2014), *abrogated on other grounds by State v. Gregory*, 192 Wn.2d 1, 427 P.3d 621 (2018). It is irrelevant to the issue of error preservation. *Rookstool v. Eaton*, __ Wn.2d __, 457 P.3d 1144, 1149 (2020) ("Cumulative error is not a method for considering unpreserved issues on appeal.").

Errors at sentencing are different than trial errors. Consistency is an important goal of sentencing jurisprudence. Furthermore, remand for correction of sentencing errors does not raise the same type of finality concerns as remand for retrial. Our courts will consider errors at sentencing for the first time on appeal when compelled by due process. *State v. Ford*, 137 Wn.2d 472, 484, 973 P.2d 452 (1999). When it comes to unpreserved allegations of improper LFOs, Washington's appellate courts will often grant substantive review if the record indicates commission of a potentially harmful legal error. *State v. Blazina*, 182 Wn.2d 827, 833-34, 344 P.3d 680 (2015); *State v. Glover*, 4 Wn. App. 2d 690, 693, 423 P.3d 290 (2018) ("In the wake of *Blazina*, appellate courts have heeded its message and regularly exercise their discretion to reach the merits of unpreserved LFO arguments.").

With these principles in mind, we address Mr. McGovern's three challenges on appeal.

*1. Trial error—evidentiary rulings*

The only evidentiary issue that has been preserved for appeal is Mr. McGovern's complaint that the Walmart asset protection managers should not have been permitted to narrate the State's video evidence and provide expert opinions as to what was occurring therein. Our analysis is guided by ER 702, which governs the admissibility of expert opinions. We review a trial court's decision to permit expert testimony for abuse of discretion. *State v. Swan*, 114 Wn.2d 613, 655, 790 P.2d 610 (1990).

Witnesses may testify as experts under ER 702 as long as two preconditions are met. First, the witness must be qualified by virtue of "knowledge, skill, experience, training or education." ER 702. Second, the expert's testimony must be helpful, in that it will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Id*. An expert's testimony is not inadmissible simply because it "embraces an ultimate issue to be decided" at trial. ER 704.

The trial court here had ample basis to admit the testimony of Walmart's loss prevention mangers under ER 702. The loss prevention managers were familiar with standard procedures for accessing the cash room and handling deposit and re-set bags. Their expertise placed them in a superior position to recognize the contents of the safe and point out when the deposit bag at issue in the case was visible and when it no longer

appeared in view of the video camera. The managers also had a superior ability to recognize items such as deposit slips that might go unnoticed by an untrained observer.

This court's review of the surveillance video confirms the importance of the State's expert testimony. The video is in color, but blurry. It is lengthy and lacks audio. Contrary to Mr. McGovern's position, the video does not speak for itself. Without narrative testimony from the transcript, it is difficult to discern what is happening in the video, especially with respect to the contents of the safe. In this type of circumstance, opinion testimony is warranted. *See State v. Collins*, 152 Wn. App. 429, 437-38, 216 P.3d 463 (2009).

The video was published to the jury as an exhibit. Mr. McGovern was therefore free to provide his own narration of what happened. He also could have used the video to impeach the managers' testimony, should their descriptions of the video's contents go too far. The trial court thus properly found the testimony from the State's experts was appropriate and not unfair.

Mr. McGovern points out that, at one point in the testimony, one of the asset protection mangers inaccurately testified he could see the deposit bag in the surveillance video. Our review of the video indicates that, at the point in time specified by the witness, the video's view of the safe's interior was obstructed. Mr. McGovern objected and the

objection should have been sustained. But the reason the testimony was improper was not because the witness lacked expertise under ER 702. It instead was that the particular portion of expert testimony lacked foundation. While the trial court should have sustained Mr. McGovern's objection on this point, the failure to do so was harmless error. The jury, like this court, could see the video and discern the witness was mistaken. The fact that the witness was inaccurate as to a portion of the testimony undermined the witness's credibility to the jury, but it did not create a risk of prejudicing the jury's verdict.

## 2. Trial error—prosecutorial misconduct

For the first time on appeal, Mr. McGovern makes several allegations of prosecutorial misconduct. As previously noted, the lack of a contemporaneous objection presents a significant hurdle to appellate review. Our analysis indicates none of Mr. McGovern's allegations meets the requisite standard for relief.

Mr. McGovern first claims the prosecutor violated the trial court's in limine order by eliciting opinions of guilt from the asset protection managers and the police officer. *See State v. Scherf*, 192 Wn.2d 350, 389, 429 P.3d 776 (2018) (A "witness, lay or expert, may not testify about the defendant's guilt or innocence."). We are unswayed. The trial court specifically instructed Mr. McGovern to object if the State's witnesses strayed beyond their approved expert testimony. He did not do so. Instead, Mr. McGovern

elicited his own testimony on this issue as part of a defense strategy to argue a rush to judgment and inadequate investigation. Given defense counsel purposefully delved into this topic, a remedy on appeal is unavailable. *See State v. Rushworth*, 12 Wn. App. 2d 466, 476, 458 P.3d 1192(2020).

Next, Mr. McGovern argues the prosecutor improperly asserted an opinion about Mr. McGovern's guilt. Mr. McGovern points to statements made during his cross-examination and in closing, where the prosecutor noted Mr. McGovern's testimony was "convenient." The comments made during questioning may have been argumentative, but there was no blatant expression of a personal belief in Mr. McGovern's guilt. An objection and request for curative instruction could have cleared any possible confusion. Appellate relief is therefore unwarranted.

Third, Mr. McGovern claims the State trivialized its burden of proof by referring to the principle of Occam's Razor in opening and summation. *See State v. Lindsay*, 180 Wn.2d 423, 434, 326 P.3d 125 (2014) (noting misconduct for prosecutor to misstate burden of proof). The prosecutor described Occam's Razor in opening as follows:

> [T]here is a principle that is present in physics, biology, religion and even the court system. It's called Occam's Razor. You may not know the name Occam's Razor but the principle stands for the idea that the simplest explanation to a problem is generally the right one. I'm going to ask that you keep Occam's Razor in mind as you listen and evaluate the testimony that's going to be presented during the course of this trial.

11

RP at 182. The prosecutor asked the jury to "apply Occam's Razor" to the facts of the case. *Id*. at 185. In summation, the prosecutor asked the jurors to keep the principle in mind during deliberations as a "mantra." *Id*. at 390.

In context, the prosecutor's comments about Occam's Razor amounted to an argument about how to assess circumstantial evidence, not the burden of proof. The prosecutor's point was that the simplest explanation for the circumstantial evidence pointing to Mr. McGovern's guilt was that Mr. McGovern in fact stole the money. This perspective contrasted with Mr. McGovern's theory of the case, which was that he was the victim of an unfortunate combination of circumstances, such as isolated access to the case, dropping the money, and large cash deposits into his bank. While the prosecutor should not have engaged in argument during opening statement, doing so did not amount to improper burden shifting. To the extent Mr. McGovern believed there was a danger of the jury misunderstanding the Occam's Razor analogy, an objection and curative instruction would have adequately addressed the issue.

Finally, Mr. McGovern claims the prosecutor improperly shifted the burden of proof by questioning Mr. McGovern in cross-examination about how he would have stolen from Walmart. *See State v. Sundberg*, 185 Wn.2d 147, 153, 370 P.3d 1 (2016) (noting misconduct to shift burden of proof to defense). The problem for Mr. McGovern

12

is that he objected on the basis of relevance, not misconduct or burden shifting. *See*

*Powell*, 166 Wn.2d at 82-83 (Error preservation requires the defendant cite the same basis

for objection at trial and appeal.). Given Mr. McGovern's admission to law enforcement

that he had thought about stealing from Walmart, the trial court correctly deemed the

prosecutor's question relevant. Had Mr. McGovern also objected the State was engaged

in burden shifting, the trial court could have taken appropriate responsive action. Mr.

McGovern's unpreserved claim of misconduct is not a basis for reversal on appeal.

## 3. Sentencing error—LFOs

Mr. McGovern argues the trial court should not have imposed waivable LFOs

($200 criminal filing fee, $50 booking fee, and $250 appointed attorney fee) because it

lacked complete information regarding his finances. *See* RCW 10.01.160(3); RCW

36.18.020(2)(h). As Mr. McGovern recognizes, the current record does not establish

whether he meets the pertinent definition of indigence. *See* RCW 10.101.010(3)(a)-(c).

Given this circumstance, remand for reconsideration of waivable LFOs is appropriate. On

remand, the trial court shall ensure any nonrestitution LFOs are not assessed interest,

pursuant to RCW 10.82.090(1). LAWS OF 2018, ch. 269, § 1.

No. 36328-7-III
*State v. McGovern*

CONCLUSION

The judgment of conviction is affirmed. This matter is remanded for

reconsideration of LFOs.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____, C.J.
Pennell, C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Fearing, J.

14