IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34934-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STEPHEN BENTON HARRIS, JR., | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — When a defendant raises the defense of unwitting possession to charges of possession of a controlled substance, does the trial court abuse its discretion under ER 403 when excluding evidence from a police officer that the officer observed another person in contact with the defendant to be under the influence of that controlled substance? Based on the unusual facts behind this appeal, we answer in the negative. We affirm appellant Stephen Harris' conviction for possession of methamphetamine.

FACTS

Although the jury convicted Stephen Harris with possession of a controlled substance, our facts begin with Harris' alleged assault of his girlfriend, Angela Cline.

Harris contends that methamphetamine he possessed belonged to Cline and that a police officer should have been allowed to testify to Cline's methamphetamine behavior.

On an autumn day, Spokane Police Officer Kellee Gately responded to a report of an assault on Cline. Officer Gately entered a laundromat and encountered a distressed and traumatized Cline, who suffered from a bloody nose. By speaking with Cline and other witnesses, Gately concluded she held probable cause to arrest Cline's boyfriend, Stephen Harris, for domestic violence.

Spokane Police Officer Kellee Gately found Stephen Harris seated in a car parked in the laundromat parking lot. Officer Gately handcuffed Harris and searched his pockets. Gately seized from Harris' front pocket a ubiquitous small, clear plastic baggie with a white residue therein. Gately believed the white substance constituted methamphetamine, although she did not adjudge Harris as being under the influence of the stimulant. She warned Harris that, if the bag contained methamphetamine, authorities would charge him with a felony. Harris exclaimed, "'that's not mine,'" as if distancing himself from the drugs. Report of Proceedings (RP) (Oct. 18, 2016) at 88. Officer Gately also discovered Angela Cline's cell phone and payee card in Harris' pocket.

PROCEDURE

The State of Washington charged Stephen Harris, in superior court, with possession of a controlled substance and, in district court, with domestic violence. The district court dismissed with prejudice the domestic violence charge brought against

Harris.  As a result of the district court dismissal, the superior court granted the following

pretrial order in limine:

> The State has stipulated that the fact that [Stephen Harris] was
> arrested for a domestic violence offense in particular is irrelevant to the
> issue of whether [Harris] knowingly possessed a controlled substance.
> Accordingly, per ER 404, the jury shall only be informed, and the State's
> witness shall be instructed to limit their testimony, to the fact that [Harris]
> was lawfully arrested.

Clerk's Papers (CP) at 94-95.

During opening statement, Stephen Harris' counsel stated that Angela Cline

appeared to be under the influence of methamphetamine at the laundromat.  Angela Cline

could not be located for trial, and thus the jury heard no testimony from Cline.

During direct examination at trial, Spokane Officer Kellee Gately testified to

responding to a call and eventually arresting Stephen Harris.  She did not disclose to the

jury the purpose of the call or the reason for arresting Harris.

During cross-examination of Police Officer Kellee Gately, the following exchange

occurred:

> Q  And he exclaimed in surprise "that's not mine."  Is that correct?
> A  I don't know if surprise is the correct word.  He did exclaim
> "that's not mine."
> Q  As if he hadn't seen it?
> A  No, as if distancing himself from it.
> Q  As if trying to tell you that he didn't expect to see that?
> A  That could be.

RP (Oct. 18, 2016) at 88.

3

Next during the cross-examination of Officer Kellee Gately, defense counsel

asked her whether, at the time she interviewed Angela Cline, Cline appeared under the

influence of methamphetamine. The State objected on the basis of the order in limine,

and Gately never answered the question in the presence of the jury. Counsel and the trial

court then engaged in a lengthy discussion as to the relevance of Angela Cline's alleged

consumption of methamphetamine, the propriety of such testimony in light of the pre-

trial order in limine, and the confusing nature of any such testimony. Because we review

the trial court's ruling on the State's objection for an abuse of discretion, we quote much

of the discussion in order to discern arguments forwarded, facts on which the parties

relied, and the basis of the trial court's ruling.

Immediately after the objection by the State to Officer Kellee Gately's testimony

of the appearance of Angela Cline, the following colloquy occurred outside the presence

of the jury:

> MR. NELSON [Deputy Prosecutor]: Your Honor, I think if the
> defense wants to go into her demeanor, there were a lot of things going on
> and, obviously, if he wants to elicit the fact that she is agitated and upset.
> And I think Officer Gately said she might have even been under the
> influence of drugs at the time she was interviewed. She was also, Your
> Honor, to be quite blunt, under the influence of just having the hell beat out
> of her. She was bleeding. She was crying. I have marked as State's
> Exhibit No. 3 photographs taken of her. I think photographs are absolutely
> relevant.
>   . . . .
> If he wants to open the door to her demeanor and her appearance, it
> would be the State's position the fact that she reported she was beaten

severely, the fact she's bleeding from the mouth, the fact her trach tube was being taken from her and the fact she had been crying are all relevant.

THE COURT: The problem I have is that you've [defense counsel has] already done it. You did it in opening statement and you did it again here, and it's now in the minds of the jury that she has, she may be under methamphetamine when, in fact, she was traumatized from domestic violence and that's what brought the police. And I struggled when you said that in your opening statement. "He's opened the door," I said that to myself, but the State didn't say anything. They didn't object in the opening. This is the first time.

. . . .

THE COURT: You have elicited testimony about her emotional condition.

MR. ELSTON [Defense Counsel]: No.

THE COURT: And to just unilaterally say that she is under the influence of methamphetamine is an unfair representation, in my estimation.

RP (Oct. 18, 2016) at 90-92. Defense counsel responded:

MR. ELSTON: Your Honor, I will would [sic] be happy to call Officer Gately back to the stand and go through the parts of her report that we're referring to. I think this court really needs to know what's in the report and there is a lot of different information in the report. Okay. So Officer Gately does talk about her demeanor and behavior. I did not ask Officer Gately what was her demeanor. I did not ask Officer Gately what was her behavior. Officer Gately testified through her training and experience she recognizes in the field when people appear to be under the influence of methamphetamine. It is that training and experience that led her to the opinion that Mr. Harris was not acting as if he was under the influence of methamphetamine. Her observation, and we can put her on stand right now to confirm this, her observation that Ms. Cline appeared to be under the influence of methamphetamine was not based on her being upset. It was not based on her being assaulted. It was not based on her emotional state of mind, but rather on her physical behavior, manifestations of being under the influence of a stimulant, first of all.

Second of all, based on the statement against interest by Ms. Cline herself saying "I used methamphetamine in the last 24 hours." So the State has attempted to blur these issues and say that if we address

5

methamphetamine, we're addressing the assault case. They are two completely separate things. . . . I don't believe she will testify that the reason why she believed Ms. Cline was under the influence of methamphetamine was because of her upset behavior or injuries due to the assault. She believes she was under the influence of methamphetamine because of objective physical manifestations that she looks for when she's dealing with people based on her training and experience. . . .

. . . .

And I can't stress strongly enough that it was also followed with a statement against interest, which is admissible, from Ms. Cline that she had, in fact, been using methamphetamine. So this doesn't have anything to do with the assault, and it doesn't have anything to do with the symptoms of the assault or the behavior generated by the assault. It's strictly based on this officer's professional training and experience in recognizing physical manifestations being under the influence of a stimulant such as methamphetamine.

RP (Oct. 18, 2016) at 92-94.

The State countered that Police Officer Kellee Gately is not a drug recognition expert, and, accordingly, the defense could not qualify Gately as an expert to testify whether Angela Cline acted under the influence of methamphetamine. Nevertheless, the State did not object to defense counsel asking Officer Gately whether Stephen Harris was under the influence or Gately's answer to the question. The State further contended that defense counsel should not be allowed to surgically extract some observations regarding Cline without the jury hearing what other circumstances could have affected her demeanor that day. The State argued that, if the defense solicited testimony about Cline's deportment, the State could present evidence on all of Officer Gately's observations:

This lady, Angela Cline, was bleeding. She was distraught. She was dirty. She said she had been threatened. She said she was being held

6

against her will. She said her dog had been threatened, her family had been threatened. There were all sorts of things going on with this lady.

RP (Oct. 18, 2016) at 94-95. The State also mentioned that Cline told law enforcement that Stephen Harris had cashed her disability checks.

After conclusion of the first colloquy, the trial court remarked:

> THE COURT: I need you to both start thinking about how I can mitigate this.
> So we did make provision that evidentiary prohibitions subject to reconsideration as evidence comes forward such as opening the door. I appreciate that whether there was or wasn't domestic violence against Ms. Cline is not probative of whether Mr. Harris was in possession of a controlled substance. But the defense has cast the theory that the methamphetamine is Ms. Cline's and the proof of that is how she was behaving. And that ignores her presence, state of being, manner of expression, however one would characterize it, is affected by being traumatized. So now what do we do?

RP (Oct. 18, 2016) at 97.

Stephen Harris' counsel then commented that Officer Kellee Gately could testify that Angela Cline stated she had ingested methamphetamine in the last twenty-four hours because of the statement against interest exception to the hearsay rule. The trial court responded:

> THE COURT: But not in this case. She is not a party to this case.

RP (Oct. 18, 2016) at 98.

Following further argument, the trial court granted defense counsel's request to question Officer Kellee Gately as an offer of proof outside the presence of the jury.

7

Defense counsel questioned Officer Gately regarding her ability to detect drug use:

> Q: So with regard to methamphetamine, what symptoms of methamphetamine use did you recognize in Ms. Cline's behavior?
> A: I believed that I recognized some paranoia. Her eyes as far as pinpointed. She was very busy, yet not everything flowed together in sequence.
> Q: When you say "pinpointed," do you mean her pupils were constricted?
> A: That's correct.
> Q: And is that something in your training and experience that is a sign of stimulant use?
> A: Yes.
> Q: Do you – did you feel at the time of that interview that you were confusing her mannerisms associated with potentially being a victim of assault and her feelings about Mr. Harris with the symptoms of methamphetamine use?
> A: It was a combination of everything. That's why I arrested him for the original charge of domestic violence. I believed her nose was broken. She was a wreck. She was a wreck.
> Q: Right. What I'm asking about is your conclusion that she appeared to be under the influence of methamphetamine. Do you feel strongly that that was a clear basis for you to make that conclusion?
> A: It was one of my deciding factors for the jumping around in the story, which is why I had asked her, when you befriend somebody, they usually become very honest. So I said, "Have you been using today?"
> Q: What did she say?
> A: She said yes.

RP (Oct. 18, 2016) at 104-05. Officer Gately also testified that Cline's irrational behavior could be attributable to drug use, fear, or paranoia. Ultimately, the following exchange occurred between defense counsel and Officer Gately:

> Q: . . . Is your opinion that Ms. Cline was under the influence of methamphetamine separate and distinct from her symptoms of having been a victim of assault?
> . . . .

A: I believe in my honest opinion that [it] is a totality of the circumstances. It's not just meth. I was there for a different purpose.

Q: . . . I understand you have a different focus and it's hard to separate out the two.

A: Impossible, I would say. I can't tell you if there were head injuries onboard. It appeared she had a broken nose.

Q: And I'm not asking you for a medical diagnosis. But it is your opinion, based on your training and experience, that she was under the influence of methamphetamine; is that correct?

A: That was one drug, yes.

Q: Okay. And she, in fact, admitted to you using methamphetamine that day or within the last 24 hours?

A: Yes.

Q: And notwithstanding the issues of the assault, do you still believe that she was under the influence of methamphetamine, in your opinion, based on your training and experience, not as a doctor, not as a [drug recognition expert], but as a law enforcement officer with 27 years experience?

. . . .

MR. NELSON [Deputy Prosecutor]: Your Honor, she's already testified she can't make that distinction. He's asking the same question over and over and over looking for a proper response.

THE COURT: She said it was impossible. I think I'm going to sustain the objection. I have to figure out what to do. I have to figure out what to do. It's a stew. I mean, you made a stew.

RP (Oct. 18, 2016) at 112-14.

The trial court entertained additional argument. Stephen Harris' counsel

remarked:

I would love to have been able to track down Ms. Cline to ask her if it was her methamphetamine. We couldn't find her. So we're stuck in this situation of an officer who told us in an interview, "yes, I think she was under the influence of methamphetamine by her appearance and behavior and she admitted using it," that being relevant to whose methamphetamine this was.

9

We have a case where it's clear that the officers collected a number of items of Ms. Cline's from my client's pockets at the laundromat where they were at. It's our theory of the case, and we should be able or entitled to argue our theory of the case that that was Ms. Cline's methamphetamine and it's significant circumstantial evidence that Ms. Cline appeared to be under the influence. So that's our theory. That's what I presented in our opening statement.

RP (Oct. 18, 2016) at 116-17. The prosecution commented:

But I think most importantly, Your Honor, I think this is all a red herring, because possession of a controlled substance, the elements of the offense are possession. No one can own methamphetamine, Your Honor. It's contraband. And whether or not Mr. Harris had it in his possession is one question and the other question is whether or not that possession was unwitting. And that's a statutory defense. So, whether or not it was her methamphetamine, we have this happen all the time where we pull over a car; woman has the meth and said "my boyfriend said hold this because he is going to jail." It's possession. It doesn't matter whose it is. Nobody has title to it. Nobody has ownership of that drug. It's possession. And if he had it in his pocket and he knew it was there, he is guilty of possession of a controlled substance. I don't care who bought it. I don't care who was using.

RP (Oct. 18, 2016) at 118. Stephen Harris' counsel responded, but did not confront the State's theory that regardless of whether the methamphetamine belonged to Angela Cline, Harris committed the crime of possession.

The trial court recessed, during which recess counsel briefed the evidentiary question. The patient trial court then entertained further argument. Defense counsel commented:

On the other hand, having presented the reason why we believe the officer's opinion that this individual was under the influence of methamphetamine, we believe it is relevant because we believe, and it's our

10

theory of the case, these two were doing laundry together; that items were moved from pockets to pockets. The State has already elicited testimony that my client said "that's not mine." We already elicited testimony from the officer that my client was in possession of other items of Ms. Cline's, which they returned to Ms. Cline. So we already have a factual basis to believe he is in possession of some of Ms. Cline's items. The fact that Ms. Cline was under the influence of methamphetamine and the methamphetamine my client is accused of possessing is a used up relatively empty bag of methamphetamine with some residue left in it. I believe it is relevant to show that he unwittingly possessed it along with the other items of hers pursuant to our theory of the case.

So we believe the methamphetamine, being under the influence of methamphetamine, is admissible and relevant, and so we asking for that.

RP (Oct. 18, 2016) at 128-29. Although defense counsel argued unwitting possession, he

did not expressly claim that Stephen Harris knew not that Angela Cline handed him

methamphetamine.

The trial court finally ruled:

THE COURT: Here is my ruling, and you all do what you think is appropriate.

I think if I had had a motion in limine before the trial to exclude testimony about whether Ms. Cline had methamphetamine, had taken methamphetamine, I would have had a better opportunity to manage the case, but I didn't. And it came out, and that's the nature of a trial. I mean, trials, you never know what's going to happen and it's a fluid circumstance.

My sense is that under ER 401 and 402, there may be some probativeness about Ms. Cline's physical condition and its impact on Officer Gately's assessment that she was under the influence of methamphetamine, but my concern is that if I allow that in, there is no way for me not to risk that the jury is going to be taken by the unfortunate physical condition of Ms. Cline as she has been beaten, her nose had been broken; she's terrified of Mr. Harris. And he's not on trial for that. He's on trial for whether or not he possessed methamphetamine, a residue amount, at that time. And as challenging as it is for all of us, I feel like following the law I would have to subscribe to [ER]403 here and not allow

11

it because it would risk—it's going to spill over and he's going to be viewed by the jury as the person who inflicted that assault. And that's not what he's on trial for.

. . . .

THE COURT: But here is my problem: It's the defense's theory that it's her meth, and the fact that she appeared to have meth is, you know, that's not too speculative. I mean, in other words, it's not the kind [of] thing that I could exclude on some evidentiary basis. It does fall within [ER]401 and 402. It's rough. I don't like the fact that what happened to her happened to her and she was there in that circumstance and appearing the way she did because of what happened to her, but I can't change the other aspects of the case. It is what it is.

RP (Oct. 18, 2016) at 133-35. The trial court later added:

I'm going to limit the defense from attributing the observation that she was under the influence of meth because, as this hearing has demonstrated, it really turns into a mini trial about what should or shouldn't come in along with it and it's just too murky for me. It's too difficult to try to parse it out. For example, when you get to the fact that one of the behaviors that Officer Gately based her opinion on about whether she was or wasn't under the effect of meth, that she declined medical attention. And when I asked what that was, "her face was bleeding," we just get too far and I'm not comfortable with that. So I'm issuing, if you will, an order in limine that we're not going to introduce the officer's opinion that the witness appeared to be under the influence of meth.

RP (Oct. 18, 2016) at 144-45.

Stephen Harris elected not to testify in his defense. The trial court, over the State's objection, instructed the jury on the law of unwitting possession. The jury returned a verdict of guilty, and the court sentenced Harris to twelve months.

12

LAW AND ANALYSIS

The sole question on appeal is whether the trial court erred when denying Stephen Harris the opportunity to question Officer Kellee Gately as to whether, based on her observations, Angela Cline appeared under the influence of methamphetamine. The trial court initially, to the benefit of Harris, excluded testimony under ER 403 that Harris assaulted Angela Cline. The trial court later excluded Kellee Gately's testimony in part because evidence of any effects of methamphetamine intertwined with evidence of the effects of the assault. Allowing testimony of Cline being under the influence of the controlled substance without permitting evidence of the assault would mislead the jury as to the condition in which Officer Gately found Cline. Although Gately testified outside the hearing of the jury that she deemed Cline to be under the influence, Gately also testified that she could not distinguish between the distress and injuries resulting from the assault with the effects of methamphetamine.

The trial court, as part of its later ruling, did not identify any evidence rule that supported its decision. Nevertheless, the trial court noted that insertion of evidence of Cline's behavior would create a mini-trial on the question of what caused that behavior. Isolated evidence of Cline suffering from the ingestion of the methamphetamine would mislead the jury. Such a ruling incorporates concepts found in ER 403. The rule bespeaks:

> Although relevant, evidence may be excluded if its probative value

13

is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

We therefore analyze this appeal on the assumption that the trial court rendered a ruling under ER 403. Stephen Harris does not contend otherwise and does not argue the trial court failed to follow the steps required for an ER 403 ruling.

Stephen Harris bases his assignment of error in part on constitutional grounds. A defendant's right to an opportunity to be heard in his defense, including the right to examine witnesses against him and to offer testimony, is basic in our system of jurisprudence. *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973); *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010). For purposes of our review, we do not consider constitutional principles of assistance. Although the accused enjoys a constitutional right to present a defense, the scope of that right does not extend to the introduction of otherwise inadmissible evidence. *State v. Aguirre*, 168 Wn.2d 350, 362-63, 229 P.3d 669 (2010). An accused does not have a right to offer incompetent, privileged, or otherwise inadmissible evidence. *State v. Lizarraga*, 191 Wn. App. 530, 553, 364 P.3d 810 (2015), *review denied*, 185 Wn.2d 1022, 369 P.3d 501 (2016). Therefore, we focus on Washington evidentiary rules.

Relevant evidence tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. ER 401. Generally, relevant evidence is admissible. ER 402. "The

threshold to admit relevant evidence is very low. Even minimally relevant evidence is admissible." *State v. Darden*, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002). We later examine the weight of Officer Kellee Gately's testimony of Angela Cline's lack of sobriety. Nevertheless, we proceed on the assumption that the testimony holds relevance to the guilt of Stephen Harris.

ER 403 allows relevant evidence to be excluded when the danger of unfair prejudice substantially outweighs its probative value. *State v. Barry*, 184 Wn. App. 790, 801, 339 P.3d 200 (2014). Trial courts have considerable discretion to consider the relevancy of evidence and to balance the probative value of the evidence against its possible prejudicial impact. *State v. Rice*, 48 Wn. App. 7, 11, 737 P.2d 726 (1987). A decision to admit or exclude evidence is reviewed for an abuse of discretion. *City of Kennewick v. Day*, 142 Wn.2d 1, 5, 11 P.3d 304 (2000). Because of the trial court's considerable discretion in administering ER 403, reversible error is found only in the exceptional circumstance of a manifest abuse of discretion. *State v. Gould*, 58 Wn. App. 175, 180, 791 P.2d 569 (1990).

To balance the weight of Angela Cline's purported use of methamphetamine compared to the evidence's misleading nature and its creation of an undue waste of time, we analyze the law with regard to the crime charged. The trial court convicted Stephen Harris of unlawful possession of a controlled substance, in violation of RCW 69.50.4013(1). This statute declares:

> It is unlawful for any person to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his or her professional practice, or except as otherwise authorized by this chapter.

RCW 69.50.4013(1) establishes a strict liability crime in that the State need not prove knowledge of the possession. *State v. Sundberg*, 185 Wn.2d 147, 149, 370 P.3d 1 (2016). Nevertheless, to reduce the harshness of this offense, courts have created an unwitting possession defense and placed the burden on the defendant to establish the defense by a preponderance of the evidence. *State v. Sundberg*, 185 Wn.2d at 149. The doctrine permits a defendant to avoid liability if he can prove by a preponderance of the evidence that he did not know the substance was in his possession or did not know the nature of the substance. *State v. Deer*, 175 Wn.2d 725, 735, 287 P.3d 539 (2012).

On appeal as at the trial court, Stephen Harris contends that any opinion of Officer Kellee Gately as to whether Angela Cline functioned under the influence of methamphetamine related to his unwitting possession defense. According to Harris, the testimony tended to show that he did not know the methamphetamine to be in his possession because Officer Gately testified that Harris did not act as if he had ingested methamphetamine. We question the practical logic behind this argument. Assuming Cline to have ingested methamphetamine stored in the baggie found in Harris' pocket, it does not follow that Harris lacked knowledge of the baggie and its content within his pocket. Harris could have given the methamphetamine to Cline. Cline could have

16

handed the methamphetamine to Harris to hold. Despite carrying the burden to show unwitting possession, Harris never testified that he did not know the methamphetamine to be inside his pants. He did not testify the methamphetamine accidentally landed in his pocket. Therefore, we question the extent of the relevance of such testimony.

Spokane Officer Kellee Gately also testified that she found Angela Cline's payee card and cellphone in Stephen Harris' pocket. Harris likewise did not proffer any evidence that he lacked knowledge of the cellphone and card sitting in his pocket.

Stephen Harris emphasizes Police Officer Kellee Gately's testimony that Harris declared that the methamphetamine was not his and that Harris could have, with this utterance, been claiming that he lacked knowledge of the methamphetamine being in his pants. Nevertheless, Harris never exclaimed to Gately that he knew not of the presence of methamphetamine. Gately's concession that Harris could have meant to protest any knowledge of the methamphetamine lacks a firm evidentiary foundation. Gately first observed that Harris wanted to distance himself from the methamphetamine, without Harris denying knowledge of the substance. Gately's testimony as to the purpose behind Harris' comment incorporated speculation.

In addition to the tangential relevance of Officer Kellee Gately's observations of Angela Cline's sobriety to the issue of unwitting possession, the trial court based a ruling on witness Kellee Gately's inability to detach her observations consistent with Angela

17

Cline's drug use from her viewing the results of domestic violence. For these reasons, we hold the trial court did not abuse its discretion.

Stephen Harris emphasizes the state Supreme Court decision in *City of Kennewick v. Day*, 142 Wn.2d 1 (2000) to support his position. In *Day*, the city charged Doug Day with possession of marijuana and possession of drug paraphernalia. An officer found marijuana and a marijuana pipe in the console of Day's car. Day denied knowledge of the marijuana and pipe being present in his car and testified to his car previously being repaired by an employee of a repair shop, which employee the shop fired for drug use. The trial court prohibited testimony regarding Day's reputation for sobriety on the ground that such evidence did not constitute character evidence but instead addressed Day's earlier conduct. On this basis, the trial court ruled the evidence irrelevant.

On appeal, the Supreme Court, in *City of Kennewick v. Day*, determined the lower court abused its discretion in excluding evidence of Doug Day's reputation of avoiding drugs. The court held the evidence relevant. The court declared in part:

> When the defense of unwitting possession is raised, the defendant's knowledge is directly relevant to the defense of unwitting possession. Accordingly, the universe of relevant evidence expands.

*City of Kennewick v. Day*, 142 Wn.2d at 11.

The facts, contentions, and rulings in *City of Kennewick v. Day* diverge greatly from Stephen Harris' appeal. Stephen Harris never testified. He provided no direct evidence that he lacked knowledge of the presence of the methamphetamine. He sought

only to introduce a police officer's impression of a third-party's use of methamphetamine. Harris never sought to introduce evidence of his reputation for sobriety. Harris' trial court did not rule the offered testimony irrelevant. The trial court recognized the relevancy of the evidence but barred the evidence under ER 403. The Supreme Court, in *City of Kennewick v. Day*, noted that the trial court abused its discretion by misreading the law as prohibiting the introduction of the character evidence.

We agree with the State that the trial court might have properly permitted the introduction of Officer Kellee Gately's testimony that Angela Cline looked to be influenced by methamphetamine. Nevertheless, even when evidence is admissible, the trial court retains discretion to preclude its use under ER 403. *State v. Perez-Valdez*, 172 Wn.2d 808, 815, 265 P.3d 853 (2011).

We note that Kellee Gately testified, outside the presence of the jury, that Cline told her she had imbibed methamphetamine that day. On appeal, Harris does not argue that Officer Gately should have been able to testify to Cline's concession of methamphetamine use. An out-of-court statement against interest survives the hearsay rule only with the unavailability of the declarant. ER 804(b)(3). We do not know what attempts either party asserted to subpoena Cline in order to render Cline unavailable for purposes of the hearsay exception. ER 804(a)(5).

The State also argues that any error in excluding testimony was harmless error. We need not address this additional argument.

No. 34934-9-III
*State v. Harris*

## CONCLUSION

We affirm Stephen Harris' conviction of possession of a controlled substance. Due to Harris' indigency, we deny the State costs on appeal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Korsmo, J.

_____
Pennell, A.C.J.

20